UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACQUELINE GONZALEZ,

                              Plaintiff,

            -v-

NEW YORK CITY HEALTH &
HOSPITAL CORPORATION, CITY OF
NEW YORK, and ROBERT
RATKEWITCH,

                              Defendants.

18-CV-2645 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiff Jacqueline Gonzalez brings this action against Defendants the City of New York
(the "City"), New York City Health and Hospital Corporation ("H&H"), and Dr. Robert
Ratkewitch, alleging claims of employment discrimination under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); Section 1981 of Title 42 of the U.S. Code,
42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law
§§ 290 *et seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin.
Code §§ 8-101 *et seq.* (the "NYCHRL").  (Dkt. No. 27 ("Compl.") ¶ 1.)

Defendants now move to dismiss the operative Amended Complaint under Federal Rule
of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Dkt.
No. 28.)  For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.     Background**

The Court draws the following facts from the Amended Complaint, which are taken as
true for the purpose of resolving this motion to dismiss.  The Court also relies on several

documents submitted by Defendants, which were referenced in and integral to the Amended Complaint.[1]

Plaintiff Jacqueline Gonzalez is a Hispanic woman with "over twenty-five years of management experience in the field of Dentistry." (Compl. ¶¶ 16–17.) On July 21, 2014, Gonzalez was hired by Defendant H&H to serve as an Assistant Director. (Compl. ¶ 19.) Gonzalez alleges that, during her employment with H&H, she was "harassed, verbally assaulted, and demeaned by Defendant Robert Ratkewit[c]h because of her sex" on a weekly basis. (Compl. ¶ 25.) Among other things, Gonzalez alleges that Ratkewitch "told staff not to listen to" her, "berated" Gonzalez and "said terrible things about her" in front of patients, called and referred to Gonzalez as "that woman," and "interfered with schedules generated by" Gonzalez. (Compl. ¶¶ 27–31; *see also* Compl. ¶¶ 32–33, 41 (describing other alleged mistreatment).)

---

[1]    Ordinarily, courts cannot "consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). However, a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 121 (S.D.N.Y. 2012) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "A document is incorporated by reference when it is 'integral' to the complaint," and can be considered if it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Fox v. Citizens Bank N.A.*, No. 17 Civ. 656, 2018 WL 1478046, at *3 (S.D.N.Y. Mar. 26, 2018) (second quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Defendants have submitted three documents for the Court's consideration: Gonzalez's workplace violence incident reporting form (Dkt. No. 29-2), the resolution of that complaint (Dkt. No. 29-3), and Gonzalez's Equal Employment Opportunity Commission charge form (Dkt. No. 29-4). Because these documents are referenced in the Amended Complaint (Compl. ¶¶ 9, 11, 34–35, 45–46) and are integral to Gonzalez's retaliation claims and her ability to bring the Title VII claims asserted in the Amended Complaint, and because their authenticity is not disputed by either party (*see* Dkt. No. 30 at 5; Dkt. No. 34 at 3, 7, 10), the Court will consider the documents here.

Gonzalez further alleges that Ratkewitch's treatment of her was caused by her sex and is part of a pattern of Ratkewitch treating women employees worse than men.  (Compl. ¶¶ 26–27, 40–42.)

Gonzalez complained to supervisors about Ratkewitch's behavior on "numerous occasions," but it never improved.  (Compl. ¶¶ 34–38, 43.)  Instead, Gonzalez alleges that sometime after she filed a workplace violence complaint against Ratkewitch on July 20, 2017, "the doctors at the facility alienated" her.  (Compl. ¶¶ 45–47; Dkt. No. 29-2.)  Additionally, in the wake of the workplace violence investigation and other complaints that Gonzalez lodged against Ratkewitch, the facility's new Associate Executive Director "avoided contact with" Gonzalez and "treated her disrespectfully."  (Compl. ¶¶ 52–54.)  And despite requesting a transfer multiple times, Gonzalez was kept at the same work facility.  (Compl. ¶ 55.)  Ultimately, on April 30, 2018, Gonzalez resigned her position at H&H.  (Compl. ¶¶ 20, 56.)

Gonzalez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in September 2017.  (Compl. ¶ 9.)  On December 21, 2017, the U.S. Department of Justice issued Gonzalez a right to sue letter (Compl. ¶ 12), and Gonzalez filed this action on March 26, 2018 (Dkt. No. 1).  Defendants moved to dismiss the initial complaint (Dkt. No. 19), and Gonzalez subsequently filed the operative Amended Complaint on October 12, 2018 (Dkt. No. 27).  The Amended Complaint asserts eight claims for relief: (1) discrimination and harassment under Title VII; (2) retaliation under Title VII; (3) discrimination and harassment under Section 1981; (4) retaliation under Section 1981; (5) discrimination and harassment under the NYSHRL; (6) retaliation under the NYSHRL; (7) discrimination and harassment under the NYCHRL; and (8) retaliation under the NYCHRL.  (Compl. ¶¶ 57–97.)

Now before the Court is Defendants' motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.  (Dkt. No. 28.)

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead factual allegations sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[T]he duty of a court" in ruling on a motion under Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *DiFolco v. MSNBC Cable L.L.C*, 622 F.3d 104, 113 (2d Cir. 2010)).

## III.    Discussion

Defendants seek dismissal of Gonzalez's Amended Complaint in its entirety. There are three main points in dispute between the parties: (1) whether Gonzalez's claims are timely; (2) whether the Title VII retaliation claim was properly exhausted; and (3) whether Gonzalez has adequately pleaded her claims under Rule 12(b)(6).[2] The Court addresses each point in turn.

---

[2]      In addition, there are two important points raised by Defendants that are not in dispute. First, Defendants argue that, to the extent that Gonzalez intends in the Amended Complaint to assert any claims against the City, all such claims must be dismissed, because the City is a separate legal entity from H&H and is not a proper defendant in this case. (Dkt. No. 30

## A.     Timeliness

Defendants first argue that Gonzalez's claims are barred in part by the applicable statutes of limitations.  (Dkt. No. 30 at 3–5.)

"In New York, claims under Title VII . . . are subject to a 300-day statute of limitations—claims that accrued more than 300 days before the filing of a charge with the EEOC are time-barred."  *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 5621, 2014 WL 3110019, at *5 (E.D.N.Y. July 8, 2014); *see* 42 U.S.C. § 2000e-5(e)(1).  Defendants contend that, to the extent Gonzalez seeks to rely on any events occurring more than 300 days before the filing of her EEOC complaint in September of 2017 to support her Title VII claims, those claims are time-barred.  (Dkt. No. 30 at 4.)

The NYSHRL and NYCHRL each impose a three-year statute of limitations for employment discrimination claims, calculated from the date the action is commenced.  N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).  With respect to Gonzalez's claims under state and municipal law, Defendants contend that they are time-barred to the extent they rely on events occurring before March 26, 2015.  (Dkt. No. 30 at 4.)

Gonzalez responds that her claims are timely under the continuing violation doctrine, and that the Court may consider all instances outside the limitations periods because she asserts hostile work environment claims and has alleged sufficient acts occurring within the limitations periods.  (Dkt. No. 34 at 5–7.)

---

at 3.)  Gonzalez concedes this argument.  (Dkt. No. 34 at 4.)  Accordingly, all claims against the City are dismissed.

Second, Defendants contend that Gonzalez's claims under Section 1981 must be dismissed, because that provision "does not provide a separate private right of action against state actors."  (Dkt. No. 30 at 6.)  Gonzalez does not contest the dismissal of the Section 1981 claims.  (Dkt. No. 34 at 7.)  Counts III and IV of the Amended Complaint are therefore dismissed in their entirety.

"[I]n the case of a [Title VII] hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within [the limitations period]; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)); *see also Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 nn. 5–6 (S.D.N.Y. 2016) (noting that the same continuing violations standard applies to the NYSHRL, though a more lenient standard may apply to the NYCHRL).

Gonzalez does not provide specific dates for discrete instances of alleged harassment, but she does allege that the various acts occurred "[o]n a weekly basis from the time she was hired to the time she was constructively discharged (July 2014 through April 2018)." (Compl. ¶¶ 25–32.) And Gonzalez alleges that she met with Ratkewitch and two supervisors in July 2017 to discuss the harassment. (Compl. ¶ 38.) From this, the Court concludes that Gonzalez has sufficiently alleged that at least one harassing act occurred within the limitations period, such that the Court can consider the entire period of alleged harassment for purposes of Gonzalez's hostile work environment claims.

In reply, Defendants contend that, nonetheless, any acts occurring outside the limitations periods cannot serve as the basis for liability for any sex-based disparate treatment claims. (Dkt. No. 36 at 2.)[3] The Court need not consider this argument, however, because it concludes that to

---

[3] The parties do not dispute the timeliness of the retaliation and constructive discharge claims. Indeed, the relevant acts underlying these claims took place from July 2017 to April 2018 (Compl. ¶¶ 45–49, 56; Dkt. Nos. 29-2 through 29-4), well within the limitations periods.

the extent the Amended Complaint asserts any disparate treatment claims, those claims have been abandoned.  (*See infra* Section III.C.1.)

**B.     Exhaustion**

Defendants next argue that Gonzalez's Title VII retaliation claim was not properly exhausted.  (Dkt. No. 30 at 5–6.)  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)).  Here, Gonzalez alleges that she filed a charge with the EEOC in September 2017.  (Compl. ¶ 9.)  That charge form alleges discrimination based on sex, but it makes no mention of retaliation.  (Dkt. No. 29-4.)  From this, Defendants contend that any retaliation claim under Title VII was not properly exhausted and thus must be dismissed.  (Dkt. No. 30 at 5.)

Gonzalez responds that the retaliation claim is nonetheless exhausted because it is "reasonably related" to the EEOC charge.  (Dkt. No. 34 at 7.)  Courts have recognized an equitable defense to the exhaustion requirement where "more recent allegations of discrimination [are] 'reasonably related' to the discrimination about which [the plaintiff] ha[s] filed an earlier charge with the EEOC."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 386 (2d Cir. 2015). This defense applies in three situations:

> 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

*Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks and citation omitted).

Gonzalez contends that the "reasonably related" doctrine applies to her retaliation claim, because "the allegations of retaliation . . . were carried out within weeks of her filing a workplace violence complaint and her filing of an EEOC Charge." (Dkt. No. 34 at 7.) Defendants respond that retaliation could have been raised to the EEOC because the EEOC charge was filed a month after the workplace violence complaint, and that the Amended Complaint does not allege that the retaliation was in response to the EEOC charge. (Dkt. No. 36 at 3.) The Court disagrees with Defendants.

The Amended Complaint alleges that, "subsequent to Ms. Gonzalez's workplace violence complaint against Dr. Ratkewitch, the doctors at the facility alienated Ms. Gonzalez." (Compl. ¶ 46.) The workplace violence complaint was filed on July 20, 2017, and the investigation was closed on August 1, 2017. (Dkt. No. 29-3.) Gonzalez signed her EEOC charge form on August 14, 2017 and submitted the charge in September 2017. (Dkt. No. 29-4; Compl. ¶ 9.) Subsequently, in January 2018, Gonzalez was told by one coworker that "the doctors were afraid because she complained about Ratkewitch and they feared based on what they heard that she might complain about them as well." (Compl. ¶¶ 48–49.) Gonzalez alleges, upon information and belief, that "Dr. Ratkewitch spoke to doctors at the facility about Ms. Gonzalez's complaints." (Comp. ¶ 50.) Gonzalez later asserts that H&H "has retaliated against [her] in violation of Title VII for complaining about Defendants' discriminatory practices." (Compl. ¶ 64.)

The Court reads the Amended Complaint to allege that Gonzalez was retaliated against as a result of complaining about Ratkewitch's conduct. And these complaints took the form of an official workplace violence complaint, internal complaints to supervisors, and her EEOC charge. (Compl. ¶¶ 9–10, 34–36, 53.) As such, the Court understands Gonzalez to allege that the

retaliation against her began sometime after July 20, 2017, and was in response to the combination of internal complaints and her EEOC complaint.

The Court concludes that these allegations are sufficient to satisfy the second type of "reasonably related" claim, encompassing situations "where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Terry*, 336 F.3d at 151 (internal quotation marks omitted). Admittedly, this case involves a slight variation on this second "reasonably related" circumstance because Gonzalez alleges retaliation based on *both* the filing of an EEOC charge and the pursuit of essentially contemporaneous internal complaints. But this is a distinction without a difference, as the purposes of applying this "reasonably related" defense to exhaustion apply equally here. *See Duplan v. City of New York*, 888 F.3d 612, 622–23 (2d Cir. 2018) (discussing the considerations underlying this defense). The Title VII retaliation claim was thus properly exhausted as reasonably related to Gonzalez's EEOC charge, and Defendants' request to dismiss the claim on the basis of exhaustion is denied.

### C.    Merits

The Amended Complaint can be read to raise four categories of claims: (1) sex-based disparate treatment claims; (2) hostile work environment claims; (3) constructive discharge claims; and (4) retaliation claims. The Court addresses the merits of each category in turn.

#### 1.    Disparate Treatment Claims

In their opening brief, Defendants argue that Gonzalez has failed to adequately allege the elements of a sex discrimination disparate treatment claim under Title VII, the NYSHRL, and the NYCHRL. (Dkt. No. 30 at 9–14.) In her response brief, however, Gonzalez does not specifically counter the arguments for dismissing any disparate treatment claims raised in the Amended Complaint. (*See* Dkt. No. 34 at 8–11.) As a result, Defendants contend that Gonzalez has abandoned these claims and that they should be dismissed. (Dkt. No. 36 at 4–5.)

"Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014). "At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08 Civ. 442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *see also Sullivan v. City of New York*, No. 14 Civ. 1334, 2015 WL 5025296, at *4–5 (S.D.N.Y. Aug. 25, 2015) (collecting cases).

Here, Gonzalez does not oppose Defendants' arguments for dismissing her disparate treatment claims. Nor does Gonzalez specifically refer to any disparate treatment claims in her brief, whether in defending the timeliness of her claims (Dkt. No. 34 at 5–7) or in her discussion of the merits (Dkt. No. 34 at 8–11). Accordingly, to the extent the Amended Complaint could be read to assert any sex-based disparate treatment claims, the Court deems those claims to have been abandoned. Therefore, any disparate treatment claims are dismissed as a matter of law.

### 2. Hostile Work Environment

Defendants next seek dismissal of Gonzalez's hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL. (Dkt. No. 30 at 14–20.) The Court first assesses whether Gonzalez has adequately pleaded this claim under Title VII and the NYSHRL, which are governed by the same standard. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013).

To establish a hostile work environment claim under Title VII or the NYSHRL, a plaintiff must adequately plead three elements. First, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Second, a plaintiff must show "that a specific basis exists for imputing the objectionable conduct to the employer."  *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (internal quotation marks and citation omitted).  Third, a plaintiff "must show that the hostile conduct occurred because of a protected characteristic."  *Id.*

Defendants contend that Gonzalez has failed to plausibly allege each of these requirements.  (Dkt. No. 30 at 14–18.)

### a.       Severe or Pervasive Harassment

First, Defendants argue that Gonzalez has failed to allege harassing conduct that is sufficiently severe or pervasive to give rise to a hostile work environment claim.  (Dkt. No. 30 at 16–18.)  This first element "has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  In determining whether the conduct complained of has created a hostile work environment, courts "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* (quoting *Harris*, 510 U.S. at 23).

Here, Defendants do not dispute that Gonzalez has adequately alleged that she subjectively perceived her work environment to be abusive.  But Defendants contest the objective component of the severe or pervasive standard, characterizing the allegations of

harassment as "[t]rivial complaints about an unpleasant working environment" involving "uncomfortable and unpleasant interactions" with Ratkewitch.  (Dkt. No. 30 at 16.)

"[T]he Court is mindful," however, "that there is no precise test for determining whether conduct is severe or pervasive enough to constitute a hostile work environment, and as such, this is a fact-bound area of law that is particularly ill-suited to dismissal at the pleading stage." *Torres v. N.Y. Methodist Hosp.*, No. 15 Civ. 1264, 2016 WL 3561705, at *9 (E.D.N.Y. Jan. 7, 2016) (citation and internal quotation marks omitted).  And "[w]hile the standard for establishing a hostile work environment is high," the Second Circuit has "repeatedly cautioned against setting the bar too high." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).  Assessing the totality of the circumstances in light of these considerations, the Court concludes that dismissal is inappropriate at this time.

The Amended Complaint alleges that Ratkewitch engaged in various forms of harassing conduct, including instructing staff not to listen to Gonzalez and berating any female staff who disobeyed, berating Gonzalez in front of patients and disparaging her to patients in her absence, refusing to address or refer to Gonzalez by name, and proclaiming that Gonzalez "did not know what she was talking about."  (Compl. ¶¶ 27–30, 32.)  Although not physically threatening, these actions were allegedly taken around coworkers and patients in a manner intended to humiliate Gonzalez.  *See Kho v. N.Y. & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 723 (S.D.N.Y. 2018) (noting significance of humiliating conduct to hostile work environment claim).  And allegations that Ratkewitch went into the computer system to interfere with schedules that Gonzalez had created, and that he directed staff to disregard Gonzalez's instructions (Compl. ¶¶ 27, 31), in particular amount to the kind of harassing conduct that could easily interfere with an individual's work performance.

Furthermore, Gonzalez alleges that each category of harassing conduct occurred "[o]n a weekly basis" from July 2014 to April 2018 (Compl. ¶¶ 25–32), and the alleged frequency of such acts clearly qualifies as pervasive. *Cf. Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (noting that humiliating comments that "persisted on a weekly basis over an interval that lasted at least two and perhaps three months" were sufficient for a hostile work environment claim to survive a motion for summary judgment).

Overall, although the conduct at issue was not as severe as courts have seen in other cases, the alleged harassment is nonetheless "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Feingold*, 366 F.3d at 150 (emphasis omitted) (citation omitted).

### b. Imputing Conduct to the Employer

Next, Defendants contend that there is no basis for imputing liability to H&H. (Dkt. No. 30 at 15–16.) In order to impute liability to an employer when "the alleged harasser [whose conduct created the hostile environment] is a coworker, the plaintiff must show that the employer 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Willis v. Cty. of Onondaga*, 710 F. App'x 47, 48 (2d Cir. 2018) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000)).[4] According to Defendants, neither of these conditions obtains, because H&H provided a reasonable avenue for complaint via the workplace violence complaint process, and H&H adequately investigated the conduct

---

[4] As Defendants correctly note (Dkt. No. 30 at 10), the Amended Complaint identifies Ratkewitch as a "doctor[] at the facility" (Compl. ¶ 45), and contains no allegations that Ratkewitch was a supervisor. The Court therefore considers Ratkewitch to have been one of Gonzalez's coworkers.

alleged in Gonzalez's complaint and "concluded that it did not constitute workplace violence." (Dkt. No. 30 at 16.)[5]

Based on the Amended Complaint and Gonzalez's workplace violence resolution form, however, the Court takes a different view of the allegations against H&H. In resolving Gonzalez's workplace violence complaint, the H&H investigators determined that the "types of behaviors" alleged were "not covered under the Workplace Violence Prevention Program policy." (Dkt. No. 29-3 at 1.) But the conduct was "covered under the Employee Code of Conduct in addition to [the] Disruptive Behavior Policy." (*Id.*) The investigators thus "strongly recommended that leadership along with Labor Relations and Human Resources take appropriate actions to address these type[s] of unacceptable behavior." (Dkt. No. 29-3 at 2.)

According to the Amended Complaint, however, despite this recommendation and the additional complaints made to supervisors, Ratkewitch's harassing conduct "continued unabated." (Compl. ¶¶ 34–38, 43.) Indeed, the harassing conduct is alleged to have occurred "from the time [Gonzalez] was hired to the time she was constructively discharged (July 2014 through April 2018)." (Compl. ¶¶ 25–32.) Taken as true, these allegations are sufficient to establish at the motion to dismiss stage that H&H "knew of the harassment but did nothing about it." *Willis*, 710 F. App'x at 48 (quoting *Whidbee*, 223 F.3d at 72).

### c.     On the Basis of a Protected Characteristic

Finally, Defendants contend that Gonzalez has not adequately alleged that any hostile work environment was "based upon her sex." (Dkt. No. 30 at 17.) Conduct underlying a hostile

---

[5]     In their briefs, Defendants also allude to the fact that H&H brought about a "cessation of contact between Ratkewitch and [Gonzalez]" in the wake of the complaints. (Dkt. No. 30 at 16; Dkt. No. 36 at 6.) Because the Amended Complaint does not allege any cessation of contact, however, the Court does not consider it here.

work environment claim "can be proven to be based on sex either because the terms are facially sex-related, or because there is some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 52 (2d Cir. 2014) (citation and internal quotation marks omitted).

The Amended Complaint contains several allegations supporting the assertion that Gonzalez was harassed because of her sex. First, Gonzalez alleges that Ratkewitch refused to use Gonzalez's proper name, instead calling or referring to her as "that woman." (Compl. ¶ 30.) Defendants argue that this appellation "may evince personal animosity" rather than sex discrimination. (Dkt. No. 30 at 17.) But at the motion to dismiss stage, the Court must draw all inferences in the non-movant's favor. *See Allaire Corp.*, 433 F.3d at 249–50. Therefore, the Court draws the reasonable inference that addressing and referring to a female coworker exclusively as "that woman" is potentially indicative of sex discrimination.

The Amended Complaint also alleges that Ratkewitch "only treat[ed] women with hostility and not men," "berated any female staff member[s] who followed [Gonzalez's] directions," "consistently berate[d] wom[e]n . . . and lashe[d] out at them," and "would dismiss analysis presented by Ms. Gonzalez but not her male colleagues." (Compl. ¶¶ 26–27, 39–41.)[6] These allegations sufficiently provide the kind of "circumstantial . . . basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Adams*, 560 F. App'x at 52 (internal quotation mark and citation omitted).

---

[6] Defendants also argue that the Amended Complaint's comparison of Gonzalez's treatment to that of male employees "fails to display discriminatory intent because [it] does not plausibly allege that these males are similarly situated to her." (Dkt. No. 30 at 17.) But Defendants cite no authority for importing a requirement from the disparate treatment context into this element of a hostile work environment claim. Regardless, even without this allegation, the Court can reasonably infer from the rest of the Amended Complaint that the harassment allegedly suffered by Gonzalez was because of her sex.

*

* * *

The Court thus denies Defendants' motion to dismiss Gonzalez's hostile work environment claims under Title VII and the NYSHRL.  And because Gonzalez has adequately pleaded claims under Title VII and the NYSHRL, she has also done so under the "more protective" standard of the NYCHRL.  *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 259 (S.D.N.Y. 2014) (citation omitted).

### 3.    Constructive Discharge

Defendants also seek dismissal of Gonzalez's constructive discharge claims under Title VII, the NYSHRL, and the NYCHRL.  (Dkt. No. 30 at 18–20.)

"An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Terry*, 336 F.3d at 151–52.  The standard for constructive discharge "is higher than the standard for establishing a hostile work environment."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010).  A constructive discharge claim under Title VII and the NYSHRL "requires the employee to show both (1) that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and (2) that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign."  *Shultz v. Congregation Shearith Isr. of the City of N.Y.*, 867 F.3d 298, 308 (2d Cir. 2017) (citation omitted); *see Mascola v. City Univ. of N.Y.*, 787 N.Y.S.2d 655, 655 (App. Div. 1st Dep't 2005) (noting that "gender-based employment violations under the [NYSHRL]"—including constructive discharge—"are keyed to federal standards").

Defendants contend that Gonzalez has not adequately pleaded either requirement of a constructive discharge claim under Title VII and the NYSHRL.  (Dkt. No. 30 at 19–20.)  The

Court need only consider the first: whether the Amended Complaint adequately alleges that H&H intended to create an "intolerable" environment that forced Gonzalez to resign. "'[S]omething beyond mere negligence or ineffectiveness is required' to constitute 'deliberate action on the part of the employer' sufficient to support a claim of constructive discharge." *Adams*, 560 F. App'x at 50 (quoting *Whidbee*, 223 F.3d at 74). "[I]neffective or even incompetent . . . handling" of alleged harassment by an employer "does not rise to the level of deliberate action required by our precedent." *Whidbee*, 223 F.3d at 74.

Here, the Amended Complaint alleges that Gonzalez "resigned from her position as a result of the hostile work environment created by Dr. Ratkewitch and fostered by his and her supervisors." (Compl. ¶ 56.) But as the Court reads the Amended Complaint, it contains no specific allegation that H&H or its supervisors acted deliberately in a way that would enable the Court to infer the intent to create an intolerable work environment for Gonzalez. Moreover, certain allegations would seem to undermine any inference of intent. (*See* Compl. ¶ 54 (noting that the Associate Executive Director "did not believe that Ms. Gonzalez experienced a hostile workplace"); *id.* ¶ 38 (describing a meeting with supervisors to address Gonzalez's allegations); Dkt. No. 29-3 at 2 (recognizing the "unacceptable behavior" occurring and recommending that it be addressed).) And although Defendants argued in their opening brief that the intent prong of the constructive discharge standard was not satisfied here (Dkt. No. 30 at 19–20), Gonzalez does not address the point in her response (*see* Dkt. No. 34 at 8–9).

Construing the Amended Complaint in the light most favorable to Gonzalez, the Court concludes that it fails to allege anything beyond "mere negligence or ineffectiveness," *Adams*, 560 F. App'x at 50 (quoting *Whidbee*, 223 F.3d at 74), on the part of H&H in addressing her

complaints of harassment. Accordingly, the constructive discharge claims under Title VII and the NYSHRL are dismissed.

The standard for a constructive discharge claim under the NYCHRL is similar to the federal and NYSHRL standard. *See E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 338–39 (S.D.N.Y. 2014). "To prevail on a claim of constructive discharge" under the NYCHRL, "the plaintiff must prove that the employer 'deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign.'" *Tulino v. Ali*, No. 15 Civ. 7106, 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019) (quoting *Short v. Deutsche Bank Sec., Inc.*, 913 N.Y.S.2d 64, 66 (App. Div. 1st Dep't 2010)). For the reasons discussed above, the Amended Complaint does not adequately plead that H&H *deliberately* created intolerable working conditions for Gonzalez. Accordingly, the NYCHRL constructive discharge claim is also dismissed.

### 4. Retaliation

In her Amended Complaint, Gonzalez asserts that she was retaliated against as a result of complaining about Ratkewitch's conduct, in violation of Title VII, the NYSHRL, and the NYCHRL. (Compl. ¶¶ 64, 83, 93.) Specifically, Gonzalez alleges that the other doctors with whom she worked began to alienate her and stopped communicating with her in the wake of her complaints, which detrimentally affected her ability to perform her work. (Compl. ¶¶ 45–49, 51.) And Gonzalez further alleges that the Associate Executive Director "avoided contact" with Gonzalez due to the complaints, and treated Gonzalez disrespectfully. (Compl. ¶¶ 52–54.) Defendants seek to dismiss the retaliation claims on the basis that Gonzalez has not plausibly alleged several required elements. (Dkt. No. 30 at 20–23.)

"A prima facie claim for retaliation under Title VII [or the NYSHRL] . . . requires a showing (1) that the plaintiff was engaged in a protected activity; (2) that the defendant knew of

that protected activity; (3) that the defendant took adverse employment action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action." *Gordon v. City of New York*, No. 14 Civ. 6115, 2015 WL 3473500, at *11 (S.D.N.Y. June 2, 2015).[7] In other words, for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "[T]he burden for establishing a *prima facie* case of retaliation is '*de minimis*.'" *Duplan*, 888 F.3d at 626 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

Defendants argue that Gonzalez has failed to adequately allege three elements of the *prima facie* case for her Title VII and NYSHRL retaliation claims: the engagement in protected activity, the subjection to an adverse employment action, and the existence of a causal connection between them. (Dkt. No. 30 at 20–23.)

### a. Protected Activity

First, Defendants dispute whether Gonzalez has adequately alleged that her complaints against Ratkewitch constitute protected activity. (Dkt. No. 30 at 20–21.) An employee engages in protected activity under Title VII and the NYSHRL by either "opposing discrimination proscribed by the statute" or "participating in Title VII [or NYSHRL] proceedings." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Opposing discrimination can take the form of making informal complaints to management. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). "However, while such complaints may be informal, they

---

[7]  Retaliation claims under Title VII and the NYSHRL are analyzed under the same framework. *See Augustine v. Cornell Univ.*, No. 14 Civ. 7807, 2015 WL 3740077, at *4 (S.D.N.Y. June 15, 2015).

cannot be so vague or 'generalized' that the employer could not 'reasonably have understood[] that the plaintiff's complaint was directed at conduct prohibited by Title VII [or the NYSHRL].'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (first alteration in original) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (per curiam)).

Here, Defendants argue that Gonzalez has not engaged in protected activity because her complaints to supervisors did not specify that she was suffering discrimination on the basis of sex. (Dkt. No. 30 at 20.) Indeed, Gonzalez's workplace violence complaint indicates that she was suffering "harassment" from Ratkewitch, but it says nothing about the harassment being based on a protected characteristic. (Dkt. No. 29-2; *see also* Dkt. No. 29-3.) And in discussing her other internal complaints in the Amended Complaint, Gonzalez never specifically alleges that she complained about being harassed *on the basis of her sex*. (*See* Compl. ¶¶ 34–36, 38.) Based on the limited description of Gonzalez's complaints in her Amended Complaint, the Court concludes that they were too "generalized," such that H&H could not be expected to reasonably understand that the complaints were "directed at conduct prohibited by Title VII," rather than non-discriminatory harassment. *Bowen-Hooks*, 13 F. Supp. 3d at 222 (citation omitted).

However, Gonzalez's filing of an EEOC charge clearly constitutes protected activity. *See Jute*, 420 F.3d at 173. And the Court reads the Amended Complaint to allege that Gonzalez suffered retaliation due to her collective complaints about Ratkewitch's conduct, including the EEOC charge. (*See supra* Section III.B.) Therefore, the protected activity element of the *prima facie* case has been satisfied to the extent the retaliation claims allege retaliation in response to Gonzalez's participation in EEOC proceedings.

### b. Adverse Employment Action

Second, Defendants argue that Gonzalez has not adequately pleaded that she suffered an adverse employment action. (Dkt. No. 30 at 21.) An "adverse employment action" for the sake of a Title VII retaliation claim "is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Actions that are 'trivial harms'—*i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse" and thus do not constitute actionable conduct. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington*, 548 U.S. at 68). As such, "Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'" *Id.* at 569 (quoting *Burlington*, 548 U.S. at 67).

Defendants contend that the adverse actions of which Gonzalez complains are merely the sort of "minor annoyances that employees may encounter at work." (Dkt. No. 30 at 21.) As to the treatment Gonzalez allegedly received from the new Associate Executive Director, the Court agrees. Gonzalez does not allege that she was harmed in any specific way by the Director's behavior. (*See* Compl. ¶ 54.) And being avoided at work or treated disrespectfully constitutes the sort of "petty slights" that do not rise to the level of adverse employment action.

With respect to Gonzalez's treatment by doctors at the facility, however, the Court reaches a different result. Defendants are correct that, in some circumstances, courts have concluded that being excluded from meetings or alienated is not sufficient to demonstrate adverse action for a retaliation claim. *See Dillon v. Morano*, 497 F.3d 247, 255 (2d Cir. 2007); *McWhite v. N.Y.C. Hous. Auth.*, No. 05 Civ. 0991, 2008 WL 1699446, at *11 (E.D.N.Y. Apr. 10,

2008).  But in determining whether an adverse action has occurred in a particular case, "[c]ontext matters."  *Vega*, 801 F.3d at 90 (quoting *Burlington*, 548 U.S. at 69).

Here, Gonzalez alleges that her job as an Assistant Director for H&H involved "work[ing] closely with doctors at the facility," as well as training employees and generating schedules for them.  (Compl. ¶¶ 23–24, 31, 44.)  In the wake of her complaints about Ratkewitch, Gonzalez alleges that the other doctors alienated her, did not trust her, and would not communicate with her.  (Compl. ¶¶ 46–48.)  As a result, "Gonzalez's job performance was detrimentally affected because she needed to coordinate with doctors to maintain a successful dental department."  (Compl. ¶ 51.)  In the context of Gonzalez's particular position and workplace, construing the allegations in the light most favorable to her, the alleged alienation by the other doctors and harm suffered "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Vega*, 801 F.3d at 90 (citation omitted).  The Court thus concludes that the third element of the *prima facie* case has been adequately pleaded.[8]

_____

[8]     The Court notes that adverse employment actions are normally taken by the *employer*.  *See Burlington*, 548 U.S. at 68 ("The antiretaliation provision . . . prohibit[s] *employer actions* that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." (emphasis added) (citation omitted)).  But the conduct of a plaintiff's coworkers can constitute an adverse employment action for purposes of a retaliation claim where the employer knows about the conduct but fails to stop it.  *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) ("An employee could suffer a materially adverse change in the terms and conditions of her employment if her employer knew about but failed to take action to abate retaliatory harassment inflicted by co-workers."), *abrogated on other grounds by Burlington*, 548 U.S. 53.

As the Court reads the Amended Complaint, it contains no allegations that Gonzalez complained about alienation by doctors at the facility to her supervisors, or that the supervisors allowed the treatment to continue unchecked.  But Defendants do not argue for dismissal of the retaliation claims on this basis, and the Court will not dismiss these claims without hearing from the parties on the application of *Richardson* to this case.  However, the parties should be prepared to address at the next stage of this case whether the alleged alienation by Gonzalez's coworkers can be attributed to H&H for the purpose of constituting an adverse action.

### c. Causation

Finally, Defendants argue that Gonzalez has failed to adequately plead the causation element of the *prima facie* case. (Dkt. No. 30 at 21–23.) To sufficiently allege causation for a Title VII or NYSHRL retaliation claim at the motion to dismiss stage, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90. This causal connection "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff." *Thomson v. Odyssey House*, 652 F. App'x 44, 46 (2d Cir. 2016) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Defendants contend that Gonzalez has failed to allege any facts "suggesting retaliatory animus" or establishing when the alleged alienation began. (Dkt. No. 30 at 22.)[9] For her part, Gonzalez attempts to establish causation indirectly through temporal proximity, contending that the "isolation occurred within weeks of her complaining to supervisors, making a workplace violence report, and the filing of an EEOC Charge." (Dkt. No. 34 at 11.)

Defendants are correct that the Amended Complaint is not specific about the timing of the retaliatory treatment suffered by Gonzalez. The Amended Complaint alleges that the alienation occurred "subsequent to Ms. Gonzalez's workplace violence complaint" (Compl.

---

[9] Defendants also briefly argue that Gonzalez cannot establish causation because the alleged harassment began in 2014, before Gonzalez had engaged in any protected activity. (Dkt. No. 30 at 22–23; Dkt. No. 36 at 10.) But this argument confuses the sex-based harassment that serves as the basis for Gonzalez's hostile work environment claim—allegedly perpetrated by Ratkewitch from 2014 to 2018 (Compl. ¶¶ 25–32)—with the alienation that serves as the adverse employment action underlying her retaliation claim—allegedly perpetrated by other doctors at the facility, beginning in late 2017 (Compl. ¶¶ 45–49).

¶ 46)—which was filed on July 20, 2017 and resolved on August 1, 2017. (Dkt. Nos. 29-2, 29-3.) Furthermore, because the only protected activity adequately alleged by the Amended Complaint is the filing of the EEOC charge (*see supra* Section III.C.4.a), the relevant starting point is the time the charge was filed in September 2017 (Compl. ¶ 9). The Amended Complaint also alleges that Gonzalez asked another doctor about the way she was being treated in January 2018. (Compl. ¶ 48.) At most, this establishes roughly a five-month period during which the alienation resulting from the filing of the EEOC charge is alleged to have begun.

The Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). And it has previously held at the summary judgment stage that "five months is not too long to find the causal relationship." *Id.* In the context of this case, the Court concludes that the gap of five months at the outmost between Gonzalez's protected activity and the onset of the retaliatory conduct is not too long to establish indirect causation for the purposes of the *prima facie* case of retaliation at the pleading stage.

* * *

The Court concludes that Gonzalez has adequately pleaded the elements of a *prima facie* case of retaliation under Title VII and the NYSHRL. And therefore, Gonzalez has also adequately pleaded the elements of retaliation "under the more expansive standard of the NYCHRL." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 n.3 (2d Cir. 2013); *see Gonzalez v. City of New York*, No. 15 Civ. 3158, 2015 WL 9450599, at *4 (E.D.N.Y. Dec. 22, 2015) ("The NYCHRL standard is 'more liberal' and 'more expansive' than the Title VII standard, and any

claim that states a cause of action under Title VII will state one under NYCHRL.").[10]
Gonzalez's retaliation claims thus survive Defendants' motion to dismiss.

## IV.    Leave to Amend

Gonzalez requests permission to file an amended complaint in the event any of her claims
are dismissed.  (Dkt. No. 34 at 11.)  Defendants contend that "all claims against the City of New
York and Plaintiff's § 1981 claims must be dismissed with prejudice" because Gonzalez
conceded their impropriety, but otherwise Defendants do not respond to the request for leave to
amend in their reply brief.  (Dkt. No. 36 at 1.)  The Court agrees that the claims against the City
and the Section 1981 claims must be dismissed with prejudice.

In addition to these claims, the Court has dismissed Gonzalez's disparate treatment
claims on the ground of abandonment (*see supra* Section III.A) and her constructive discharge
claims for failure to state a claim (*see supra* Section III.C.3).  Additionally, although the Court
has not dismissed the retaliation claims, it has narrowed their scope in certain ways.  (*See supra*
Section III.C.4.a–b.)

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should
be given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Under this standard,

---

[10]      However, the Court limits the scope of the NYCHRL retaliation claims to the
same extent as the Title VII and NYSHRL claims.  "[T]o prevail on a retaliation claim under the
NYCHRL, the plaintiff must show that she took an action opposing her employer's
discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely
to deter a person from engaging in such action."  *Mihalik v. Credit Agricole Cheuvreux N. Am.,
Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citation omitted).  Other than Gonzalez's
Title VII charge, the Amended Complaint does not adequately allege that the other complaints
Gonzalez lodged against Ratkewitch were acts of opposing discrimination on the basis of sex, as
opposed to complaints about non-discriminatory harassment.  (*See supra* Section III.C.4.a.)  And
the allegations about mistreatment from the new Associate Executive Director fail to rise above
the level of "petty slights or trivial inconveniences," *Mihalik*, 715 F.3d at 113 (citation omitted),
which also are not actionable under the NYCHRL.  (*See supra* Section III.C.4.b.)

courts grant leave to amend unless the proposed amendment is futile, the amendment would unduly prejudice the opposing party, or the movant has unduly delayed, acted in bad faith, or repeatedly failed to cure deficiencies in previous pleadings. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281–82 (S.D.N.Y. 2010).

The Court determines that granting leave to amend is appropriate here. Gonzalez may file a second amended complaint in this action, provided that she abandons her claims against the City and the Section 1981 claims.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Gonzalez may file a second amended complaint in this case on or before July 1, 2019. If she elects not to file a second amended complaint, she shall so indicate in a letter, and Defendants shall answer the remaining claims within 14 days of the filing of such letter.

The Clerk of Court is directed to close the motion at Docket Number 28 and to terminate the City of New York as a party to this case.

SO ORDERED.

Dated: June 11, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge